IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KIMOTHY RANDALL, K60950,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **ILLINOIS DEPT. OF CORR.,** | ) | |
| **LATOYA HUGHES,** | ) | |
| **DAVID MITCHELL,** | ) | |
| **JOHN BARWICK,** | ) | Case No. 25-cv-354-DWD |
| **C/O LOVE,** | ) | |
| **SERGEANT STORY,** | ) | |
| **BLUM,** | ) | |
| **C/O UHE,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER TO SHOW CAUSE

**DUGAN, District Judge:**

Plaintiff Kimothy Randall, an inmate of the Illinois Department of Corrections (IDOC) housed at Dixon Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983, and other statutes, for alleged deprivations of his rights while at Pinckneyville Correctional Center (Pinckneyville). Plaintiff's allegations concern an accident during a medical writ transport in March of 2023, and unrelated issues with his access to medically necessary showers and accommodations in March, April, and May of 2024.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or

asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that on March 6, 2023, Defendant Uhe and another prison employee took him on a medical writ to an outside facility. (Doc. 1 at 7). Both on the way to the facility, and on the return trip, his wheelchair was secured to the floor of the ADA transport van, but he was not fastened in with a seatbelt. On the return trip, Defendant Uhe was preoccupied with his personal cell phone and was driving recklessly and weaving in and out of traffic, which led to Uhe abruptly applying the brakes. Plaintiff was thrown head-first into a steel divider in the van. He fell to the floor and experienced a brief loss of consciousness. Uhe struggled to lift him back into his wheelchair, dropping him hard on the van floor in the process. Plaintiff alleges he had an open bleeding gash on his forehead, and excruciating pain in his head, neck, and shoulders. Uhe secured him back in his wheelchair and applied a seatbelt before calling the supervisor at the prison. Although Uhe offered to take Plaintiff to the hospital, and Plaintiff indicated he wanted to go to the hospital, the shift supervisor directed them to proceed back to the prison. (Doc. 1 at 8).

At the prison, Uhe and his co-worker made a brief stop in the employee lot to deposit their personal phones in their vehicles before proceeding into the prison. Uhe and his colleague also utilized the van's first aid kit to clean the wound on Plaintiff's

forehead and to conceal it with a bandage. (Doc. 1 at 8-9). Plaintiff was escorted to the prison's medical unit where another non-party officer explained that he had just been thrown from his wheelchair during the transport. Defendant Blum saw Plaintiff and asked if he was in pain, but she did not offer any form of medical treatment or medication and she did not further clean his wound. He faults Blum for exhibiting deliberate indifference to his injuries. He ultimately went a week before seeing Blum again on March 13, 2023, at which point she prescribed medications, but did not initiate any other form of care for his lasting pain. (Doc. 1 at 9).

Plaintiff faults Defendant Mitchell for failing to have adequate policies or practices to train staff for inmate transports in the ADA van. He claims that without proper training, Uhe drove recklessly and injured him. He claims Mitchell's lack of policies or training was intentional. (Doc. 1 at 11).

Plaintiff then turns to explaining issues that he had from March to May of 2024 at Pinckneyville. During this timeframe, he claims the medical director had given him a permit to take daily showers prior to the dressing of his ostomy being changed. He alleges Defendants Story and Love refused to follow the shower schedule, causing him to miss numerous showers before dressing changes throughout March, April, and May of 2024. Without proper showers, he alleges his ostomy was frequently bleeding and leaking stool. He developed rashes, sores, and a bad hemorrhoid. (Doc. 1 at 10). Plaintiff faults Defendant Barwick for not properly training staff to handle the ADA needs of inmates such as himself. Specifically, he claims they were not adequately trained for showers or wound dressing changes. (Doc. 1 at 11).

Plaintiff designated his own counts in the complaint, but the Court will reorganize and renumber his allegations as follows:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Uhe for failing to secure Plaintiff, driving recklessly, and denying immediate medical care;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Blum for delaying care for Plaintiff's injuries by at least a week in March of 2023;**

**Claim 3:** **Policy or practice claim against Defendant Mitchell for failing to adequately train Uhe prior to the March 2023 vehicle incident;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendants Love and Story for refusing Plaintiff's daily showers throughout March, April and May of 2024;**

**Claim 5:** **Policy or practice claim against Defendant Barwick for failing to ensure adequate training to handle the ADA needs of inmates such as frequent showers and dressing changes in March, April and May of 2024;**

**Claim 6:** **ADA and RA claim against Latoya Hughes and IDOC for failing to ensure appropriate accommodations in relation to the regular showers and dressing changes in March, April, and May of 2024;**

**Claim 7:** **State law claim under the Civil Rights Remedies Restoration Act, 775 ILCS 60/20 & 30 allowing for damages against Hughes and IDOC for the harms described in Claim 6.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court**.** Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### **Preliminary Dismissal**

Plaintiff's sole mention in the Complaint of Defendant Wexford comes in the demand for relief where he seeks to recover from Wexford for the inadequate care provided by Blum. This claim is insufficient. Under controlling precedent, Wexford may be held liable for a constitutional harm caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *See e.g., Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "In applying *Monell* and avoiding *respondeat superior* liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Id.* at 654. Here, Plaintiff's allegations do not identify a policy, custom, or practice of Wexford, and instead seek to hold them liable purely for Blum's actions. There is no *respondeat superior* liability under *Monell*, so this strategy cannot succeed. Wexford is dismissed without prejudice for failure to state a claim.

### **Analysis**

The Seventh Circuit has indicated that reckless driving, in combination with improper restraints (seatbelt, etc.), can be sufficient to state a claim under the Eighth Amendment. *See e.g. Dale v. Agresta*, 771 Fed. Appx. 659, 661 (7th Cir. 2019) (discussing the lack of precedent on transport and noting that although the lack of a seatbelt alone is not an Eighth Amendment violation, other circuits have concluded that lack of a seatbelt coupled with reckless driving or other exacerbating circumstances may pose a serious risk of substantial harm). Here, Plaintiff alleges that Uhe attached his wheelchair to the

floor of the van, but he did not apply a seatbelt, and he drove recklessly. These actions lead to an incident of hard braking, and Plaintiff was thrown from his chair, sustaining multiple injuries. He also alleges Uhe initially offered care, but then changed plans. At this initial stage, these allegations are sufficient to proceed against Uhe.

Plaintiff alleges that upon return to the prison, he made Blum aware of his injuries, but she refused all care during their first interaction. Plaintiff was left to suffer in pain for a week before Blum saw him again and agreed to prescribe pain medication. It is possible that this series of events could support a deliberate indifference claim against Blum for delaying care. Thus, Claim 2 may proceed against Blum.

As for Defendant Mitchell, Plaintiff seeks to hold him liable for failing to train staff about the use of restraints during ADA transports. He has no evidence or allegations tending to suggest that Mitchell knew risks were occurring during the transports, nor does he even have any evidence that staff was untrained. For a prison warden to be held liable for the conduct of his or her subordinates, the warden "must know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). Individual liability under § 1983 thus cannot be based on a theory of respondeat superior. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Here, Plaintiff's allegations about Mitchell's involvement suggest nothing more than respondeat superior liability. Thus, Claim 3 will be dismissed without prejudice for failure to state a claim.

Plaintiff briefly mentions a desire to hold the prison liable under the ADA or RA for the injuries he sustained during his prison transport, but there are insufficient facts to support any such claim.

### Severance of Claims 4-7

Claims 1-3 deal with Plaintiff's issues in March of 2023 related to a prison transport, whereas Claims 4-7 deal with issues in March, April, and May of 2024. The two groups of claims name different defendants and contain some distinct claims for relief. Such as the Eighth Amendment claim concerning a prison transport, versus the Eighth Amendment claim concerning access to daily showers. The Federal Rules of Civil Procedure provide limits on a litigant's ability to join claims and parties in a single lawsuit. Federal Rule of Civil Procedure 18 provides that a party may assert as many claims as they have against a single party. Alternatively, a plaintiff may join multiple claims against defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, or if there is a question of law or fact that will be common to all defendants. Fed. R. Civ. P. 20. To remedy problems with misjoinder, a court may add or drop a party, or it may sever claims from a lawsuit. Fed. R. Civ. P. 21.

"A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). The Seventh Circuit has

cautioned that courts should guard against "scattershot" pleading strategies, and that they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). The Seventh Circuit has even instructed that complaints wrought with joinder problems may be immediately stricken. *See e.g.*, *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (when faced with misjoined claims, a court may strike a pleading and give leave to amend).

Here, Claims 1-3 are plainly unrelated to Claims 4-7, so the Court finds it appropriate to sever Claims 4-7 into a new case. The Defendants in the new case shall be those subject to Claims 4-7: the Illinois Department of Corrections, Latoya Hughes, John Barwick, C/O Love, and Sergeant Story. Plaintiff will have an opportunity to opt-in to the newly created case. If he decides to proceed, he will be required to pay an additional filing fee, and his claims will be screened by the terms of 28 U.S.C. § 1915A.

## Motion for Recruitment of Counsel

There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel

himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted).

If plaintiff has demonstrated an attempt to secure counsel, then the Court turns to considering the complexity of the case and plaintiff's competence to represent himself. "Some of the circumstances that require judicial consideration are the phase of the litigation, if the prisoner has been transferred between facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas v. Wardell*, 951 F.3d 854, 860 (7th Cir. 2020); *see Eagan*, 987 F.3d at 682–83. As for competence, "A judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024) (internal citations omitted). The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff. *Eagan*, 987 F.3d at 682.

Here, Plaintiff has provided proof of his efforts, but the letters he tendered are from late December of 2023 and early January of 2024, more than a year ago. (Doc. 2 at 3-7). The Court notes that Plaintiff has other pending cases in this District (including one before the undersigned where counsel has been appointed), so it is possible these queries relate to those earlier matters, rather than an effort to seek counsel in this specific case. To be satisfied that Plaintiff has sought representation for this specific case, Plaintiff must

provide proof of three more recent efforts to secure counsel for the specific facts presented in this case.

Additionally, the Court notes that Plaintiff indicated some high school education, and provided no other explanation for why he believes recruited counsel is necessary in this matter. His complaint is coherent and well-organized, and it was legally sufficient for Plaintiff to proceed. Without more information on why he believes he cannot represent himself at this early stage, the Court is not persuaded that Plaintiff is incapable of proceeding. The next steps will involve service, initial disclosures, and the exhaustion of administrative remedies. Generally, inmates are able to handle these steps on their own with the Court's guidance. Thus, Plaintiff's Motion is denied without prejudice.

## Disposition

**IT IS HEREBY ORDERED THAT** the Clerk of Court shall sever Claims 4-7 into a new lawsuit. In the new lawsuit, the Clerk shall:

- Add Defendants Illinois Department of Corrections, Latoya Hughes, John Barwick, C/O Love and Sergeant Story as parties;

- Docket this Memorandum and Order;

- Docket the Complaint (Doc. 1);

- Provide Plaintiff with 30 days to opt-in to the lawsuit.

The Clerk shall then **TERMINATE** Defendants IDOC, Hughes, Barwick, C/O Love, and Sergeant Story from this matter. In the new action, the Clerk of Court is **DIRECTED** to seek Plaintiff's consent, and to seek an application to proceed *in forma pauperis* or the $405 filing fee.

**IT IS HEREBY ORDERED THAT Claims 1 and 2 survive against Defendants Uhe and Blum**. By contrast, all claims against David Mitchell and Wexford are insufficient so the Clerk of Court is **DIRECTED** to **TERMINATE** Mitchell and Wexford.

The Clerk of Court is **DIRECTED** to prepare for Defendants Uhe and Blum: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms and a copy of the Complaint (Doc. 1) to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **<u>Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.</u>**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order.

Plaintiff's Motion for Recruitment of Counsel (Doc. 2) is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: May 1, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.